**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON**

| | | |
|---|---|---|
| DON BLANKENSHIP, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 2:20-cv-000278 |
| | : | |
| v. | : | Judge John T. Copenhaver, Jr. |
| | : | |
| NBCUNIVERSAL, LLC, *et al.* | : | |
| | : | |
| Defendants. | : | |

## **DEFENDANTS NBCUNIVERSAL, LLC AND CNBC, LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Kevin T. Shook (OH #0073718)
(*pro hac vice*)
Frost Brown Todd LLC
10 West Broad Street, Suite 2300
Columbus, OH 43215
kshook@fbtlaw.com
(614) 464-1211 Phone
(614) 464-1737 Fax

Ryan W. Goellner (OH #0093631)
(*pro hac vice*)
Frost Brown Todd LLC
3300 Great American Tower
301 E. Fourth Street
Cincinnati, OH 45202
rgoellner@fbtlaw.com
(513) 651-6800 Phone
(513) 651-6981 Fax

Jared M. Tully (WV Bar No. 9444)
Alex J. Zurbuch (WV Bar No. 12838)
Frost Brown Todd LLC
500 Virginia Street East, Suite 1100
Charleston, WV 25301
jtully@fbtlaw.com
azurbuch@fbtlaw.com
(304) 345-0111 Phone
(304) 345-0115 Fax

*Attorneys for CNBC, LLC and NBCUniversal, LLC*

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................. 1

II.     STATEMENT OF FACTS ................................................................... 2

        A.      Blankenship and the Upper Big Branch Disaster. .................. 2

        B.      Blankenship's Retirement from Massey. ................................. 2

        C.      Blankenship's Conviction and Prison Term. ........................... 2

        D.      Blankenship's Reputation Prior to the UBB Disaster. ........... 4

        E.      Blankenship's Failed Campaign for U.S. Senate .................... 5

        F.      The Challenged Statements ..................................................... 5

                1.      Leigh Ann Caldwell's May 17, 2018 Article on NBCNews.com. ............. 6

                2.      Brian Schwartz's June 25, 2018 Article on CNBC.com. ........................... 6

        G.      Blankenship Is Not Aware of Anyone Who Thinks Less of Him or
                of Any Lost Business Opportunities Caused by Defendants'
                Statements. ............................................................................. 7

III.    LAW AND ARGUMENT .................................................................... 7

        A.      Legal Standard. ....................................................................... 7

        B.      Defendants' Statements Were Not Published with Actual Malice or
                Intent to Injure. ...................................................................... 8

                1.      There Is No Clear and Convincing Evidence of Actual
                        Malice and Nothing in the Record Supports Blankenship's
                        Additional Burden of Proving Intent to Injure. ........................... 10

                2.      Blankenship Cannot Establish Clear and Convincing
                        Evidence of Actual Malice at the Time of the Challenged
                        Publications. ............................................................................. 13

                3.      Defendants' Investigative Techniques Do Not Establish
                        Clear and Convincing Evidence of Actual Malice. .................... 14

        C.      Blankenship Has No Clear and Convincing Evidence of Material
                Falsity. .................................................................................... 15

        D.      Blankenship Cannot Satisfy the Elements of Damages and
                Causation. ............................................................................... 19

1.    Blankenship Has No Evidence of Actual Monetary Loss. ........................19

       a.    The Record is Devoid of Any Evidence of Actual
             Monetary Damages. .........................................................................20

       b.    Blankenship's Claim of Emotional Distress Is Meritless. ............ 21

2.    Blankenship Cannot Establish Causation. ................................................. 21

3.    Blankenship Cannot Rely Upon Presumed Damages. ............................... 23

IV.    CONCLUSION.................................................................................................... 24

## **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ....................................................9

*Ballengee v. CBS Broad., Inc.*, 331 F.Supp.3d 533 (S.D.W. Va. 2018)............................15, 16, 18

*Ballengee v. CBS Broad., Inc.*, 968 F.3d 344 (4th Cir. 2020) .........................................7

*Barger v. Hood*, 104 S.E. 280 (W. Va. 1920).................................................................22

*Blankenship v. Napolitano*, 451 F.Supp.3d 596 (S.D.W.Va. 2020) ....................................1, 5, 15

*Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485 (1984).................................9, 10, 12

Brewer v. Dungan, No. 92-CVS-456, 1993 WL 441306 (N.C. Super. Ct. June 30, 1993) ......................................................................................................17

*Carr v. Forbes, Inc.*, 259 F.3d 273 (4th Cir. 2001) .......................................................12

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .............................................................7, 8

*Church of Scientology Int'l v. Daniels*, 992 F.2d 1329 (4th Cir. 1993)..........................13

*Cobb v. Time Inc.*, No. 3:94–0836 1999 WL 1027044 (M.D. Tenn. Feb. 17, 1999) ...................23

*Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70 (W. Va. 1983)....................................14, 15

*Curtis Publishing Co. v. Butts*, 388 U.S. 130 (1967).....................................................9

*Erickson v. Jones St. Publishers, LLC*, 629 S.E.2d 653 (S.C. 2006)................................24

*F.A.A. v. Cooper*, 566 U.S. 284 (2012)........................................................................19

*Faltas v. State Newspaper*, 928 F.Supp. 637 (D.S.C. 1996)............................................22

*Fitzgerald v. Penthouse Int'l, Ltd.*, 691 F.2d 666 (4th Cir. 1982) .................................9

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) .........................................................23

*Greenfield v. Schmidt Baking Co., Inc.*, 485 S.E.2d 391 (W. Va. 1997)............................8

*Hahn v. City of Kenner*, 984 F.Supp. 436 (E.D. La. 1997)...............................................17

*Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657 (1989) .......................9, 14, 15

*Hatfill v. N.Y. Times Company*, 532 F.3d 312 (4th Cir. 2008) .......................................12

*Hinerman v. Daily Gazette Co., Inc.*, 423 S.E.2d 560 (W. Va. 1992) ............................................16

*Hupp v. Sasser*, 490 S.E.2d 880 (W. Va. 1997) ..................................................................................15

*Little Rock Newspapers, Inc. v. Dodrill*, 660 S.W.2d 933 (Ark. 1983) .........................................21

*Long v. Egnor*, 346 S.E.2d 778 (W. Va. 1986) ....................................................................................8

*MacDonald v. Riggs*, 166 P.3d 12 (Alaska 2007) ............................................................................23

*Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991) ..............................................9, 16, 18

*McFarlane v. Esquire Magazine*, 74 F.3d 1296 (D.C. Cir. 1996) ....................................................9

*Milan v. Long*, 88 S.E. 618 (W. Va. 1916) .......................................................................................20

*New York Times Co. v. Sullivan*, 376 U.S. 254, 279 (1964) ........................................................9, 12

*Nuwave Inv. Corp. v. Hyman Beck & Co., Inc.*, 114 A.3d 738 (N.J. 2015) .................................24

*Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986) ....................................................16

*Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610 (7th Cir. 2013) ............................................14

*Pritt v. Republican Nat. Comm.*, 557 S.E.2d 853 (W. Va. 2001) ..................................................16

*Reuber v. Food Chem. News, Inc.*, 925 F.2d 703 (4th Cir. 1991)......................................................9

*Richard H. v. Rachel B.*, No. 17-0065, 2018 WL 2277775 (W. Va. May 18, 2018)....................19

*Richard H. v. Rachel B.*, No. 18-1004, 2019 WL 6998331 (W. Va. Dec. 20, 2019) ..................24

*Riffe v. Armstrong*, 477 S.E.2d 535 (W. Va. 1996) .......................................................................21

*Rohrbaugh v. Wal-Mart Stores, Inc.*, 572 S.E.2d 881 (W. Va. 2002) .....................................19, 21

*Ryan v. Brooks*, 634 F.2d 726 (4th Cir. 1980) ................................................................................12

*Scheel v. Harris*, No. 3:11-17-DCR, 2012 WL 3879279 (E.D. Ky. Sept. 6, 2012)......................20

*Sprouse v. Clay Commc'n, Inc.*, 211 S.E.2d 674 (W. Va. 1975)....................................................10

*St. Amant v. Thompson*, 390 U.S. 727 (1968) ...........................................................................11, 15

*State ex rel. Suriano v. Gaughan*, 480 S.E.2d 548 (W. Va. 1996) ..............................................18

*Taylor v. W. Virginia Dept. of Health & Human Res.*, 788 S.E.2d 295 (W. Va. 2016) ..................................................................................................................................................8

*Tiwari v. NBC Universal, Inc.*, No. C–08–3988 EMC, 2011 WL 5079505 (N.D. Cal. Oct. 25, 2011) ........................................................................................17

## **Statutes**

18 U.S.C. § 371 ............................................................................................. 18

30 U.S.C. § 820 ............................................................................................. 17

## **Rules**

Fed. R. Civ. P. 56 ........................................................................................... 7

## I.      INTRODUCTION

Nearly a year after Plaintiff Don Blankenship lost a three-way Republican primary for a West Virginia Senate seat, he filed this case claiming "the media" were engaged in "weaponized defamation" that was part of an intentional effort "to sway elections and tarnish non-establishment candidates. . . ." (ECF No. 1, ¶ 1.) Among the many problems with Blankenship's theory is that the two challenged statements made by the only defendants in this case, NBCUniversal, LLC ("NBC") and CNBC, LLC ("CNBC," together with NBC, "Defendants"), were both published *after the election that Blankenship lost*. (*Id.* at ¶¶ 55-56.) Blankenship originally sued NBC and CNBC along with dozens of other media entities in a different lawsuit, but the Court dismissed NBC and CNBC from that case for lack of timely service. *Blankenship v. Napolitano*, 451 F.Supp.3d 596, 628 (S.D.W.Va. 2020). Tellingly, Blankenship has not bothered to depose any employee of CNBC or NBC. He has no evidence to support his claims and has not articulated any cognizable basis for filing them.

Blankenship's claims against NBC and CNBC fail for three reasons. First, Blankenship cannot present clear and convincing evidence that NBC or CNBC acted with actual malice when they referred to Blankenship as a "felon," which he must do as a public figure. Second, Blankenship cannot present clear and convincing evidence that NBC and CNBC's statements were materially false. Rather, the gist or sting of the word "felon" in those statements was no more harmful than other indisputably true adjectives for Blankenship, such as "ex-convict," "criminal" or "coal executive convicted of conspiracy to violate mine safety laws after a mine exploded killing 29 people." Third, Blankenship cannot establish the fundamental elements of causation or damage, both of which are required for any proper defamation claim. The Court should grant summary judgment in favor of NBC and CNBC, dismissing all of Blankenship's claims.

## II.    STATEMENT OF FACTS

### A.    Blankenship and the Upper Big Branch Disaster.

Blankenship was CEO of Massey on April 5, 2010 when an explosion at the company's Upper Big Branch Mine ("UBB") in West Virginia killed 29 coal miners. The UBB explosion was one of the worst mining disasters in U.S. history and four different investigations into the matter all laid blame at Mr. Blankenship' s feet. (Apr. 29 Blankenship Dep. 249:24-250:3; 268:20-269:22.)[1] Following the explosion, Blankenship became the "face of the UBB disaster" and a "huge number of news stories vilified" him for creating a culture at Massey that prioritized profits over safety (Apr. 29 Blankenship Dep. 228:18-229:9; 243:2-244:5.)

### B.    Blankenship's Retirement from Massey.

Following the UBB disaster, the Massey Board asked Blankenship to leave the company and he retired at the end of 2010. (Apr. 29 Blankenship Dep. 93:3-6.) Since then, Blankenship has not been employed, sought employment, or served on any corporate Boards. (Apr. 29 Blankenship Dep. 154:13-155:24.) Blankenship testified that the news reporting on the UBB tragedy had "a lot of impact" on his "desire and likelihood of seeking employment." (Apr. 29 Blankenship Dep. 156:2-156:21.)

### C.    Blankenship's Conviction and Prison Term.

In November 2014, Blankenship was indicted on three charges by a federal grand jury. The charges included conspiracy to violate mine safety standards at the UBB; impeding the Mine Safety Health Administration (MSHA) in carrying out its duties at the UBB; and making materially false statements and omissions regarding willful violations of safety laws at the UBB. (Apr. 29

---

[1]    Cited excerpts from Blankenship's April 29, 2021 deposition in this case are attached hereto as **Exhibit 1**. Cited excerpts from Blankenship's April 30, 2021 deposition in this case are attached hereto as **Exhibit 2**. Cited exhibits from either day of Blankenship's deposition in this case are cited as "Blankenship Dep. Ex. __" and are attached hereto as **Exhibit 3**.

Blankenship Dep. 319:21-24.) The indictment did not state whether the charges were felonies or misdemeanors. (*Id.* at 324:13-16.)

Prior to trial, Blankenship's lawyers filed a motion to transfer the venue of his criminal case, arguing that he could not possibly receive a fair trial because "[c]ommunity bias against Mr. Blankenship in this district [was] so extreme that the Court must presume juror prejudice." (Blankenship Dep. Ex. 405.) Describing his pretrial publicity as "brutally prejudicial," Blankenship cited more than two dozen news broadcasts and other reports attributing the 29 deaths to his actions and otherwise vilifying him. (*Id.* at pp. 6, 8-23.) The motion further cited widespread news coverage of repeated statements by the deceased miners' families referring to Blankenship as a "murderer," having "no heart . . . no soul," and "the devil." (*Id.* at pp. 8-12.)

A jury ultimately found Blankenship guilty of "conspiracy to violate mine health and safety standards." (Apr. 29 Blankenship Dep. 325:4-13.) This crime can be designated as either a felony or a misdemeanor, depending upon whether a jury finds the conspiracy was for the purpose of defrauding the United States. (*Id*. at 324:1-16.) While Blankenship was technically convicted of the misdemeanor version of this crime, neither the statute establishing the crime, nor the indictment filed against Blankenship, nor the judgment entered against Blankenship indicate whether the crime is a felony or a misdemeanor. (*Id.* at 325:21-327:18.) Following Blankenship's conviction, he was sentenced to one year in prison, which is the maximum term for the crime of conspiracy to violate mine safety laws. (*Id.* at 331:1-8.) The sentencing judge explained that the sentence "reflects the seriousness of the offense" and "[t]he crime is serious, and we sentence based on the conduct, which I find to be very serious, not only in its commission, but in its potential impact in terms of risk in this particular case." (*Id.* at 338:1-19.)

Blankenship served his term in a California federal prison with around 2,400 other inmates. (Apr. 29 Blankenship Dep. 348:3-19.) According to Blankenship, every other prisoner there had been convicted of a felony. (*Id.* at 348:20-23.) The guards explained to him that, "[t]here are no misdemeanors here. This is a felony federal prison." (*Id.* at 349:13-21.) Blankenship described the facility as a "felony prison" in emails to colleagues and in a full-page ad he placed in the *Charleston Gazette*, where he stated, "I was sent to felony prison for a first-time misdemeanor, prior to appeal." (*Id.* at 349:13-21.) Blankenship testified that he knows of no one else who served a year in federal prison for a misdemeanor and that the conviction "cast a shadow" over him that prevents him from engaging in business opportunities to this day. (*Id.* at 201:20-203:14; 363:9-18.)

**D.     Blankenship's Reputation Prior to the UBB Disaster.**

Blankenship's reputation was also thoroughly damaged long before the UBB disaster and his conviction. According to Blankenship, he has suffered from decades of "hateful prejudicial publicity" extending back to the 1980s. (Apr. 29 Blankenship Dep. 213:21-214:3.) In "Obama's Deadliest Cover Up," which Blankenship self-published in 2019, he explained: "Over the past thirty-five years, I have literally been slandered thousands of times" and "[i]t started two and a half decades before the Upper Big Branch explosion, and the slander has been consistent and relentless. . . ." (Apr. 29 Blankenship Dep. 242:3-243:12.)

Blankenship explains that this negative press coverage began in the 1980s, when violent labor disputes involving Massey resulted in shootings, hundreds of broken windshields, busted tires, and drivers being dragged out of their cars. (Apr. 29 Blankenship Dep. 216:1-219:24, 237:15-238:2.) This negative press coverage continued in October 2000, when Blankenship was blamed for one of the largest environmental disasters in U.S. history—a Massey mine in Martin County, Kentucky spilled hundreds of millions of gallons of coal slurry into area streams and

saturated the town of Inez, Kentucky, killing aquatic life and polluting the region's drinking water. (Apr. 29 Blankenship Dep. 227:4-228:14.) Blankenship was further vilified in 2008, when widespread news coverage accused him of "buying" a West Virginia Supreme Court justice who cast the deciding vote to overturn a $50 million judgment against Massey. (Apr. 29 Blankenship Dep. 231:12-16); *see also Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868 (2009) (reversing West Virginia Supreme Court's decision based on justice's failure to recuse himself). Over the past decade—and before Defendants' coverage of him—Blankenship was described as the "Dark Lord of Coal" (McLaughlin Dep. 256:10-12)[2] and compared to a drug dealer (Apr. 30 Blankenship Dep. 244:1-5).

### E.     Blankenship's Failed Campaign for U.S. Senate

In November 2017, while still on probation, Blankenship announced he would run in the Republican Primary for a West Virginia seat in the United States Senate. (Apr. 29 Blankenship Dep. 371:2-372:2.) On May 9, 2018, Blankenship lost the election by more than 15 percentage points, coming in third place. (Apr. 30 Blankenship Dep. 67:1-20.)

### F.     The Challenged Statements.

On March 14, 2019, Blankenship filed suit, alleging that NBC and CNBC, along with many other media organizations, politicians, and political operatives, damaged his reputation and caused him to lose his bid for the United States Senate. The Court dismissed Blankenship's claims against NBC and CNBC for untimely service of process. *Blankenship*, 451 F.Supp.3d at 628. Blankenship then refiled his claims against NBC and CNBC in this suit and obtained proper service. (ECF No. 1.) Blankenship's claims against Defendants in this lawsuit are based upon two post-primary

---

[2]      Cited excerpts from Mr. Blankenship's deposition in *Blankenship v. McLaughlin*, E.D. Va. No. 1:20-cv-00429 (filed Apr. 17, 2020) are attached hereto as **Exhibit 4**.

articles covering the runup to the general election that briefly mention Blankenship's campaign and refer to him as a "convicted felon."

### 1. Leigh Ann Caldwell's May 17, 2018 Article on NBCNews.com.

Nine days after the primary election, on May 17, 2018, NBCNews.com published an article focused on President Trump's meeting with Senate Republicans in Washington, D.C. to discuss their strategy to win the midterm general elections in West Virginia and other states (the "May 17 Article"). (Declaration of Leigh Ann Caldwell ("Caldwell Decl."), attached hereto as **Exhibit 5**, at ¶ 4 and Exhibit A thereto.) The May 17 Article discussed Trump's "singular focus" on West Virginia and how his involvement in the West Virginia primary "may have helped the GOP field a good Senate candidate." (*Id.*) The 17-paragraph article reported in the fourteenth paragraph: "The president urged West Virginia voters to support either Morrissey or another establishment candidate over ex-coal baron and convicted felon Dan Blankenship, who was running a Trump-like campaign. Blankenship himself said Trump's actions may have contributed to his loss."[3] (*Id.*) At the time she wrote the article, Caldwell believed Don Blankenship had been convicted of a felony and had no doubt that her statements were accurate. (*Id.* at ¶ 5.)

### 2. Brian Schwartz's June 25, 2018 Article on CNBC.com.

A month and a half after Blankenship lost the West Virginia primary, CNBC.com published an online news article about Donald Trump Jr. raising money for Republican Senate candidates for seats where incumbent Democrats were vulnerable, including West Virginia (the "June 25 Article"). (Declaration of Brian Schwartz ("Schwartz Decl."), attached hereto as **Exhibit 6**, at ¶ 4 and Exhibit A thereto.) The article focused on Republicans' hopes of increasing their Senate majority and aggressive fundraising efforts by the former president's son to do so. (*Id.*) In

---

[3] Though the article references "Dan" Blankenship, NBC does not dispute it was referring to Don Blankenship, the Plaintiff here.

the context of that national focus, the 15-paragraph article referenced Blankenship once, in the tenth paragraph: "[Donald Trump Jr.] also campaigned with [Republican Senate candidate Patrick] Morrisey in early June when he was competing in a crowded primary that included coal baron and convicted felon Don Blankenship who is now running as a third party candidate." (*Id.*) When Schwartz wrote the article, he believed Don Blankenship had been convicted of a felony and had no doubt that his statements were accurate. (*Id.* ¶ 5.)

### G.      Blankenship Is Not Aware of Anyone Who Thinks Less of Him or of Any Lost Business Opportunities Caused by Defendants' Statements.

Blankenship "is unaware . . . of any specific 'other business opportunities' [he] was prevented from pursuing as a result of [Defendants' alleged] defamatory statements." (**Exhibits 7 and 8**, Plaintiff's Am. Resp. to NBC and CNBC Interrog., at p. 3, No. 8.) In addition, he cannot identify any specific "individual [who] has advised Plaintiff that his/her opinion of Plaintiff has changed based on one of more of Defendant's statements." (*Id.* at p. 2, No. 7.)

## III.     LAW AND ARGUMENT

### A.      Legal Standard.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'Facts are material when they might affect the outcome of the case, and a genuine issue exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party.'" *Ballengee v. CBS Broad., Inc.*, 968 F.3d 344, 349 (4th Cir. 2020) (quoting *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010)). The party moving for summary judgment bears the initial burden of establishing the lack of dispute as to material facts and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party then fails "to make a sufficient

showing on an essential element of [his] case with respect to which [he] has the burden of proof," summary judgment is appropriate.  *Celotex*, 477 U.S. at 323.

Under West Virginia law, a public figure seeking to recover for defamation must prove: (1) publication of a defamatory statement of fact about the plaintiff; (2) falsity; (3) the defendant made the challenged statement with actual malice, that is, the defendant knew the statement was false or acted with reckless disregard of whether it was false; (4) intent to injure the plaintiff through publication of the statement; and (5) resulting injury. Syl. Pt. 4, *Long v. Egnor*, 346 S.E.2d 778 (W. Va. 1986); Syl. Pt. 6-7, *Greenfield v. Schmidt Baking Co., Inc.*, 485 S.E.2d 391 (W. Va. 1997). To prevail on his false light claim, Blankenship must show that Defendants gave "publicity to a matter concerning [him] that places [him] before the public in a false light," that "the false light in which [he] was placed would be highly offensive to a reasonable person," and that they "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which [he] would be placed." *Taylor v. W. Virginia Dept. of Health & Human Res.*, 788 S.E.2d 295, 315–16 (W. Va. 2016) (quoting Restatement (Second) of Torts § 652E (1977)).

Blankenship has failed to meet the elements of (1) actual malice and intent to injure, (2) material falsity, and (3) damages. Blankenship cannot point to any evidence that the relevant speakers knew their statements were false or acted with reckless disregard as to whether they were. Moreover, the statements were not false; they were substantially true. Blankenship also has not produced evidence of compensable damages caused by Defendants' statements. Therefore, summary judgment in NBC and CNBC's favor is proper.

### B.    Defendants' Statements Were Not Published with Actual Malice or Intent to Injure.

Blankenship does not dispute that he is a public figure. Therefore, to recover damages, he must establish actual malice—that Defendants published a statement "with knowledge that it was

false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279 (1964); *Curtis Publishing Co. v. Butts*, 388 U.S. 130 (1967). This standard is "daunting," *McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1308 (D.C. Cir. 1996) and "a very difficult standard for any plaintiff to meet," *Fitzgerald v. Penthouse Int'l, Ltd.*, 691 F.2d 666, 670 (4th Cir. 1982). A claim of malice must be based on evidence that the defendant knew of the statement's falsity or acted "with reckless disregard for whether it was false or not." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991) (internal quotations and citations omitted). Hence, "[a]ctual malice is a subjective standard," *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 714 (4th Cir. 1991) (en banc) and, when faced with summary judgment, a plaintiff must present evidence "such that a reasonable jury might find that actual malice ha[s] been shown with convincing clarity." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

The Supreme Court has "made clear" that reckless disregard requires *clear and convincing* evidence that the speaker had a "high degree of awareness of probable falsity" of the statement or entertained "serious doubts" about its truth. *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) (alteration and internal quotation marks omitted). This means Blankenship must show each speaker of a challenged statement "subjectively entertained serious doubt as to the truth of his statement." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511 n.30 (1984). As the Court already has held, actual malice is based on a defendant's subjective state of mind *at the time the challenged statement was published.* (ECF No. 398 at 27.)

Further, under West Virginia law, candidates for political office and public officials "can sustain an action for libel only if"—*in addition to Constitutional actual malice—*they can prove that "*the publisher intended to injure the plaintiff* through the knowing or reckless publication of the alleged libelous material." Syl. Pt. 1, *Sprouse v. Clay Commc'n, Inc.*, 211 S.E.2d 674, 679 (W.

Va. 1975) (emphasis added). In *Sprouse,* the Supreme Court of Appeals stated: "[I]t is necessary for a candidate for office to prove that false or misleading statements were published with knowledge on the part of the publisher of their falsity or with willful and reckless disregard of their truth, *and further to prove that they were published with a deliberate intent to injure*." *Id.* at 692 (emphasis added). Because Blankenship is a public figure and was a candidate for public office, he must not only prove actual malice by clear and convincing evidence, but also prove that Defendants intended to injure Blankenship. After a year of discovery, Blankenship has no evidence of actual malice or intent to injure. For this reason alone, summary judgment should be granted.

> 1.    **There Is No Clear and Convincing Evidence of Actual Malice and Nothing in the Record Supports Blankenship's Additional Burden of Proving Intent to Injure.**

To survive summary judgment, Blankenship must come forward with clear and convincing evidence that each speaker of a challenged statement knew their statements were false or "subjectively entertained serious doubt as to the truth of his [or her] statement[s]," at the time the statements were made. *Bose Corp.*, 466 U.S. at 511 n.30 (1984). He also must establish the additional element of intent to injure. *Sprouse*, 211 S.E.2d at 679. This is a bar that Blankenship cannot hurdle. At the time Caldwell wrote the May 17 Article, she believed Blankenship had been convicted of a felony and did not entertain any doubt that her statements were accurate. (Caldwell Decl. ¶ 5-6.) Likewise, at the time Schwartz wrote the June 25 Article, he believed Blankenship had been convicted of a felony and did not entertain any doubts that his statements were accurate. (Schwartz Decl. ¶ 5-6.)

Blankenship has no evidence to contradict this. He did not depose Caldwell or Schwartz, or anyone employed by CNBC or NBC, for that matter. He has also broadly admitted that he lacks "any evidence of what anybody knew at the time they made the [felon] statement." (Apr. 30 Blankenship Dep. 252:14-252:24.) Hence, Blankenship does not have—and *could* not have—any

clear and convincing evidence of actual malice or any evidence that would support the notion that Caldwell or Schwartz had an intent to injure him.

With respect to the May 17 Article, Blankenship did not recall ever reading the article or talking about the article and was not even sure if it was the subject of his lawsuit. (*Id.* at 162:17-165:19.) He further testified he did not know Caldwell, did not know anything about her process or research for preparing the article, and did not know anything about how Caldwell came to write the words "convicted felon" in the article. (*Id.* at 165:20-166:15 ("I have no idea how she – why she felt she should put "convicted felon" in there. You guys would know better than I do.")).

With respect to the June 25 Article, Blankenship again testified that he did not know Schwartz and was not sure whether this article was even the subject of any of Blankenship's lawsuits. (Apr. 30 Blankenship Dep. 167:2-170:20.) He further stated that he did not know anything about Schwartz's research or process for preparing the June 25 Article and had no knowledge how Schwartz came to write the words "convicted felon" in the article. (*Id.* at 170:21-171:12 ("No, I don't personally have any knowledge of this or why he said 'convicted felon' or anything.").)

It bears repeating: Blankenship's claims must be dismissed unless he can come forward with *clear and convincing evidence* that Caldwell or Schwartz "in fact entertained serious doubts as to the truth of [their] publication[s]" in the May 17 Article or the June 25 Article. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Caldwell and Schwartz have testified that they believed Blankenship was convicted of a felony when they published the May 17 and June 25 Articles and never entertained any doubts about it at the time. (Caldwell Decl. ¶¶ 5-6; Schwartz Decl. ¶¶ 5-6.) Not only does Blankenship lack clear and convincing evidence to rebut this testimony, he lacks any evidence whatsoever.

As in *Hatfill v. N.Y. Times Company*, "the record contains substantial evidence" that the speakers "*actually believed*" the substance of their statements. 532 F.3d 312, 324 (4th Cir. 2008) (affirming summary judgment). There is no evidence that the references to "felon" were the product of anything more than the use of an imprecise term to convey that Blankenship's crime was serious. That does not come close to establishing actual malice. The very premise of *New York Times v. Sullivan* was that "erroneous statement is inevitable in free debate"—and that "it must be protected if the freedoms of expression are to have the 'breathing space' that they need to survive." 376 U.S. at 271–72 (alterations omitted).[4]

It is well-settled that the use of particular "language, though reflecting a misconception, does not place the speech beyond the outer limits of the First Amendment's broad protective umbrella"—because otherwise "any individual using a malapropism might be liable, simply because an intelligent speaker would have to know that the term was inaccurate in context." *Bose Corp.*, 466 U.S. at 513 (affirming court of appeals' ruling that use of "imprecise language" was insufficient to establish actual malice). Thus, for example, the Fourth Circuit upheld the grant of summary judgment in *Ryan v. Brooks*, 634 F.2d 726, 733 (4th Cir. 1980) (where the defendant had accused the plaintiff of "extort[ing]" funds). Although that was "an unfortunate choice of words," the court held, the evidence failed to show actual malice. *Id.*

If anything, the record shows that use of imprecise language was particularly understandable here. Blankenship himself has identified *100 different news outlets* that referred to him as a "felon" in this same time period. (Apr. 30 Blankenship Dep. 80-81.) They ranged across

---

[4]     *See also, e.g.*, *Carr v. Forbes, Inc.*, 259 F.3d 273, 282 (4th Cir. 2001) ("[T]he First Amendment does not require perfection from the news media.  Were the press subject to suit every time it erred, it would decline to speak out without resorting to the sort of cumbersome due diligence common in security offerings.  For this reason, the Constitution provides the press with a shield whereby it may be wrong when commenting on acts of a public figure, as long as it is not intentionally or recklessly so.")

the political spectrum and included both TV and print. *See Church of Scientology Int'l v. Daniels*, 992 F.2d 1329, 1334 (4th Cir. 1993) (holding it was "impossible" to find actual malice "[g]iven the volume of published commentary" consistent with author's statements). And there is good reason that all of these journalists came to the same conclusion about his conviction: even Blankenship admits that he "do[esn't] know of anyone that's heard of anyone going to prison for a misdemeanor." (Apr. 29 Blankenship Dep. at 367.) Blankenship also admits he does not have any evidence to contradict Caldwell's and Schwartz's testimony that they believed Blankenship was convicted of a felony and had no serious doubts. Blankenship testified that he lacks "any evidence of what anybody knew at the time they made the [felon] statement." (Apr. 30 Blankenship Dep. 252:14-24.) Because Blankenship cannot come forward with clear and convincing evidence of actual malice and has no evidence to support an intent to injure, all of his claims should be dismissed.

> **2.      Blankenship Cannot Establish Clear and Convincing Evidence of Actual Malice at the Time of the Challenged Publications.**

To survive summary judgment, Blankenship must prove by clear and convincing evidence that Caldwell or Schwartz knew their challenged statements were false or subjectively entertained serious doubts about their truth *at the time they made them*. (ECF No. 398 at 27.) As discussed above, the undisputed testimony of Caldwell and Schwartz establishes that they did *not* have any doubt at the time of the challenged statements that Blankenship was convicted of a felony. Indeed, they affirmatively believed that he had been convicted of a felony. *Supra*, pp. 10-11. The fact that Defendants did not publish a correction likewise provides no support to Blankenship's claims. As the Court has held, the absence of a correction or retraction is not "relevant to the issue of actual malice." (ECF No. 398 at 27 ("None of these allegations [concerning a failure to retract or correct a statement] are relevant . . . because actual malice is based on a defendant's subjective state of

13

mind *at the time the challenged statement was published*, not whether or not they corrected the statement after publication.").) (Emphasis added.)  Thus, "actual malice cannot be inferred from a publisher's failure to retract a statement once it learns it to be false." *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) (citing *Sullivan*, 376 U.S. at 286).

After nearly a year of discovery, Blankenship has failed to produce clear and convincing evidence that NBC or CNBC—and more precisely, Caldwell or Schwartz—acted with actual malice when they referred to Blankenship as a felon. This fundamental deficiency also dooms his false light claim. Syl. Pt. 8-9, *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70 (W. Va. 1983) ("The 'right of privacy' [including false light] does not extend to communications which are privileged under the law of defamation."). Defendants should be granted summary judgment.

### 3. Defendants' Investigative Techniques Do Not Establish Clear and Convincing Evidence of Actual Malice.

Blankenship alleges that Caldwell and Schwartz should have consulted public records of Blankenship's conviction prior to making their statements, and he asserts that their failure to do so evinces actual malice. (ECF No. 1, ¶¶ 55-56, 64, 73.) After months of discovery, with no other evidence, this amounts to nothing more than a claim that NBC or CNBC "should have done better." At most, it posits negligence, but not actual malice, because the failure to investigate alone is not evidence of actual malice. *Harte-Hanks*, 491 U.S. at 692 ("[F]ailure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard."). Caldwell and Schwartz were not obligated to pore over West Virginia court records or previous reporting before discussing a widely known figure like Blankenship. As other courts have held, the mere failure to consult records is not proof of actual malice because "failure to investigate is precisely what the Supreme Court has said is insufficient to establish reckless disregard for the truth." *Pippen*, 734 F.3d at 614 (holding that defendants'

14

failure to search federal PACER system to see if plaintiff had in fact filed for bankruptcy was not evidence of malice).

"[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing," and there is no evidence Schwartz or Caldwell engaged in "purposeful avoidance" of the truth. *St. Amant*, 390 U.S. at 731; *see also Harte-Hanks*, 491 U.S. at 692. To the contrary, Schwartz and Caldwell believed their articles were accurate. (Caldwell Decl. ¶¶ 5-6; Schwartz Decl. ¶¶ 5-6.) Besides the bare assertion regarding a failure to investigate, which alone is insufficient, Blankenship has no evidence that could support a finding of actual malice with respect to NBC or CNBC. His claims should be dismissed as a matter of law.

### C.    Blankenship Has No Clear and Convincing Evidence of Material Falsity.

Blankenship's claims should also be dismissed because he has no clear and convincing evidence that NBC's or CNBC's statements were materially false. The Court's analysis of Blankenship's obligation to prove material falsity at the summary judgment stage is different from its analysis last year at the motion to dismiss stage. *Blankenship*, 451 F.Supp.3d at 617. The Court's interlocutory order there was based, as it had to be, solely on the pleadings. But months of discovery—including Blankenship's own document production and deposition—have revealed that the gist or sting of the word "felon," as applied to the undisputed facts of this case, are no worse than countless alternative accurate descriptions of Blankenship's criminal history.

If a challenged statement is not false, then a claim for defamation or false light fails. *Ballengee v. CBS Broad., Inc.*, 331 F.Supp.3d 533, 546, 553-54 (S.D.W. Va. 2018). The truth of allegedly defamatory words is evaluated within the context in which they were published. *Hupp v. Sasser*, 490 S.E.2d 880, 887 (1997); *Crump*, 320 S.E.2d at 87. The plaintiff has the burden to prove falsity by clear and convincing evidence. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767,

775-76 (1986); *Hinerman v. Daily Gazette Co., Inc.*, 423 S.E.2d 560, 571-72 (W. Va. 1992). Further, statements that are ***substantially*** though not literally true are not actionable. *Ballengee*, 331 F.Supp.3d at 546. A defendant's statements need not be accurate in every detail because "[m]inor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'" *Masson*, 501 U.S. at 517 (citation omitted). A statement is not considered false "unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.*; *see also Pritt v. Republican Nat. Comm.*, 557 S.E.2d 853, 861-62 (W. Va. 2001) (same). The two allegedly false statements that Blankenship attributes to NBC and CNBC refer to Blankenship as a "felon." (ECF No. 1 at ¶¶ 55-56.) Blankenship takes issue with the term "felon" because he was technically convicted of a misdemeanor. But the universe of possible accurate terms for describing Blankenship's criminal history is not limited to a dichotomous choice between "felony" and "misdemeanor." When evaluating the gist or sting of Defendants' description of Blankenship as a "felon," the Court must take into account the gist or sting of *all* other indisputably accurate descriptions of him, including "ex-convict," "serious criminal" or "the coal executive who conspired to violate mine safety standards at a mine where an explosion killed 29 people." Blankenship implores the Court to ignore the seriousness of his crime and treat him as though he were convicted of driving a car with a burned-out taillight.

Courts have held that similar inaccuracies as to the level of a crime cannot support a defamation or false light claim. For example, a California federal court held that a broadcast was not actionable where the plaintiff had been "convicted of only a misdemeanor," rather than a felony, because the broadcast had presented the underlying conduct in such a way that "the natural and probable effect on the viewer of the broadcast would be no different if the epilogue had reported [the plaintiff's] correct conviction . . . ." *Tiwari v. NBC Universal, Inc.*, No. C–08–3988

16

EMC, 2011 WL 5079505, at *15 (N.D. Cal. Oct. 25, 2011). Similarly, in *Brewer v. Dungan*, the court held that a newspaper's "mistaken characterization of the classification of the crime which plaintiff committed" could not give rise to libel, because reporting that he had been convicted of a felony was "substantially true," even where the crime "was, technically, a misdemeanor." No. 92-CVS-456, 1993 WL 441306, at *1 (N.C. Super. Ct. June 30, 1993); *see also Hahn v. City of Kenner*, 984 F.Supp. 436, 441 (E.D. La. 1997) ("Hahn's arrest on misdemeanor charges could arguably make a statement about felony arrests substantially true.").

The undisputed evidence in this case establishes that the true gist of a technically accurate description of Blankenship's conviction carries no less sting than the term "felon." Blankenship was convicted of conspiracy to violate mine safety standards at a mine where 29 people died in one of the worst mining disasters in United States history. (Apr. 29 Blankenship Dep. 249:24-250:3; 319:21-24.) Blankenship concedes that "the words conspiring to willfully commit mine safety violations *sounds horrible.*" (Apr. 29 Blankenship Dep. 340:17-21) (emphasis added). Blankenship's own lawyers sought a change in venue for his criminal trial because they believed it would "be seen as the equivalent of a murder or manslaughter trial." (Apr. 30 Blankenship Dep. 219:13-220:10.) And when Blankenship was sentenced, he received the maximum one year in prison and the judge stressed the seriousness of his crime. (*See* Apr. 29 Blankenship Dep. 319:21-24; 331:1-8; 30; 338:1-19; 30 U.S.C. § 820(d); and **Exhibit 9**, Plaintiff's Resp. to Defs.' Req. for Adm., at p. 2, Nos. 2-3.) Based upon these undisputed facts, the sting of referring to Blankenship as a "felon" is no worse in the mind of any reader than accurately describing him as the "ex-convict who spent a year in prison for conspiracy to violate safety standards in a mine that exploded killing 29 people."

Notably, Blankenship himself has used the term "felony" when describing his incarceration. Blankenship took out a full-page ad in the *Charleston Gazette* referring to the California federal prison where he served time as a "felony prison." (Apr. 29 Blankenship Dep. 349:13-21.) He claims to be the only prisoner at the Taft facility who was not convicted of a felony and he testified that he knows of no one else in American history who went to jail for a year for a misdemeanor. (*Id.* at 201:20-203:14; 363:9-364-11.) Here again, the undisputed evidence establishes that the sting of referring to Blankenship as a "felon" is no worse than referring to him as a "man who served time in a felony prison," words that Blankenship himself used.

In this context, Blankenship cannot provide clear and convincing evidence of a material falsity in NBC's May 17 Article or CNBC's June 25 Article. The gist of "convicted felon" in the May 17 Article was that Blankenship, who was mentioned only in passing, was convicted of criminal conspiracy to violate mine safety laws and served a prison sentence for a serious crime, which is true. (Caldwell Decl. Ex. A); *see also* 18 U.S.C. § 371 (permitting fine and imprisonment for both misdemeanor and felony convictions of statute). The same is true for the June 25 Article. (Schwartz Decl. Ex. A.)  Defamation law "overlooks minor inaccuracies" and requires a Plaintiff to prove material falsity. Syl. pt. 4, *State ex rel. Suriano v. Gaughan*, 480 S.E.2d 548, 551 (W. Va. 1996).  The gist of both statements at issue was accurate. Whether Defendants stated that Blankenship was a "convicted felon" or that he was convicted of conspiracy to violate mine safety laws after a deadly explosion in which 29 miners perished, would have no different effect in the mind of an ordinary viewer or reader. *See Masson*, 501 U.S. at 517; *Ballengee*, 331 F.Supp.3d at 547-48. The Court should grant summary judgment because Blankenship cannot prove material falsity by clear and convincing evidence.

### D.    Blankenship Cannot Satisfy the Elements of Damages and Causation.

Blankenship's claims fail for a third and independent reason: the undisputed facts confirm that he cannot establish damages or causation, both fundamental elements of defamation and false light claims. *Crump*, 320 S.E.2d at 77 (defamation); *Rohrbaugh v. Wal-Mart Stores, Inc.*, 572 S.E.2d 881, 888 (W. Va. 2002) (false light). Blankenship testified that one hundred different media outlets referred to him as a "felon" leading up to the May 2018 West Virginia Republican Primary. (Apr. 30 Blankenship Dep. 81:25-82:4.) He is not aware of a single person that thinks less of him as a result of either of Defendants' publications referring to him as a "felon." (**Exs. 7 and 8**, Blankenship Am. Resp. to NBC and CNBC Interrog. at 2, No. 7.) He is also not aware of any specific lost business opportunities resulting from such publications. (*Id.* at p. 3, Interrog. No. 8.) Under these facts, Blankenship's claims should be dismissed as a matter of law because: (1) he has no evidence of actual monetary loss; (2) he cannot establish causation; and (3) he cannot rely upon presumed damages.

### 1.    Blankenship Has No Evidence of Actual Monetary Loss.

"'Special damages' refers to any actual monetary loss" that a plaintiff suffered because of the defendant's conduct. *Rohrbaugh*, 572 S.E.2d at 888, n.18. They "are limited to actual pecuniary loss, which must be specially pleaded and proved." *F.A.A. v. Cooper*, 566 U.S. 284, 295 (2012) (applying defamation principles in context of federal Privacy Act). Special damages are different from "general damages," which is another term for presumed damages, i.e., those "that the law presumes follow from the type of wrong complained of[.]" *Richard H. v. Rachel B.*, No. 17-0065, 2018 WL 2277775, at *5, n.8 (W. Va. May 18, 2018) (quoting Black's Law Dictionary 472 (10th ed. 2014)) (alteration in original).[5] Regardless of the allegedly per se character of the statements

---

[5]    Blankenship's inability to recover presumed damages is addressed in Section D.3. below.

at issue, "[s]pecial damages cannot be recovered in such case without an allegation and proof of loss or damages as a consequence of the publication." Syl., *Milan v. Long*, 88 S.E. 618 (W. Va. 1916); *see also Scheel v. Harris*, No. 3:11-17-DCR, 2012 WL 3879279, *4 (E.D. Ky. Sept. 6, 2012) (even in defamation per se case, plaintiff bears "the burden of proving the amount of the damages caused by the defamatory statement"). Here, Blankenship cannot possibly satisfy his obligation to prove special damages because: (a) the record is devoid of any evidence of actual damages and (b) Blankenship's claims for emotional distress fail as a matter of law.

### a. *The Record is Devoid of Any Evidence of Actual Monetary Damages.*

Blankenship has failed to produce any other evidence of concrete harm. Blankenship "is unaware . . . of any specific 'other business opportunities' [he] was prevented from pursuing as a result of [Defendants' alleged] defamatory statements." (**Exs. 7 and 8**, Plaintiff's Am. Resp. to NBC and CNBC Interrog., at p. 3, No. 8.) He also cannot identify any specific "individual [who] has advised Plaintiff that his/her opinion of Plaintiff has changed based on one of more of Defendant's statements." (*Id.* at p. 2, No. 7.) Without identifying any specific lost business opportunities, he states that any lost opportunities are "either difficult to quantify or otherwise unknown to Plaintiff." (**Exhibits 10 and 11**, Plaintiff's Resp. to NBC and CNBC Interrog., at p. 5, No. 4.) But defamation law does not excuse his proof of damages simply because he claims they are hard to prove or he has not bothered to try. Syl., *Milan*, 88 S.E. 618. Because Blankenship cannot identify any specific "individual [who] has advised Plaintiff that his/her opinion of Plaintiff has changed based on one of more of Defendant's statements," he has not proven any harm to his reputation that could be attributed to NBC or CNBC. (**Exs. 7 and 8**, Plaintiff's Am. Resp. to NBC and CNBC Interrog., at p. 2, No. 7.) Accordingly, to the extent Blankenship is seeking damages for actual monetary loss, any such claims should be dismissed.

### b.      *Blankenship's Claim of Emotional Distress Is Meritless.*

A theory of general emotional distress does not permit Blankenship to survive summary judgment. Although privacy claims may "involve injuries to emotions and mental suffering," "defamation actions involve injury to reputation. . . ." *Crump*, 320 S.E.2d at 87 (citation omitted). Consistent with this rule, "[a]n action for defamation has always required this concept of reputational injury and recovery for mental suffering alone has not been allowed." *Little Rock Newspapers, Inc. v. Dodrill*, 660 S.W.2d 933, 935 (Ark. 1983) (citing 53 C.J.S. Libel and Slander, § 243). Thus, Blankenship may not legally recover for that claimed harm here. Even if he could, Blankenship has offered no evidence to support such a claim. He alleges that he suffered "emotional distress and insomnia as a result of Defendant's" statements and was prescribed Ambien to treat it. (**Exs. 10 and 11**, Plaintiff's Resp. to NBC and CNBC Interrog., at p. 9-10, No. 10.) But he has admitted that he took Ambien for years before Defendants' statements and that he "hardly take[s] Ambien right now." (Apr. 30 Blankenship Dep. 115:2-10.) To the extent Blankenship is seeking damages for emotional distress, his claims should be dismissed.

### 2.      Blankenship Cannot Establish Causation.

Even if Blankenship offered viable evidence of actual damages (and he has not), he cannot demonstrate that NBC or CNBC caused them. Syl. Pt. 1 and 12, *Crump*, 320 S.E.2d at 74 (holding that injury must "result" from allegedly defamatory statement); *Rohrbaugh*, 572 S.E.2d at 888 (harm to privacy interest must "result" from invasion); *see also Riffe v. Armstrong*, 477 S.E.2d 535, 556 (W. Va. 1996) (tort liability extends only to "natural and proximate effects" caused by the tort). Summary judgment is proper for this additional reason.

Blankenship admits that at least 100 media outlets other than NBC and CNBC referred to him as a "felon" leading up the West Virginia Republican primary. (Apr. 30 Blankenship Dep. 81:25-82:4; **Ex. 9**, Plaintiff's Resp. to Defs.' Req. for Adm., at p. 2, No. 1.) In the original iteration

of this lawsuit, he claimed to have suffered one generalized and undifferentiated harm caused by

dozens of others.[6] (*See Blankenship v. Napolitano, et al.* (S.D.W.Va. Case No. 2:19-cv-00236),

ECF No. 14.) Blankenship claims that he was damaged by <u>all</u> "Defendants' defamatory

statements" or "statements placing him in a false light" generally in that lawsuit, and by NBC and

CNBC in this one. (*Id.* at ECF No. 14, ¶¶ 237, 250.) But he admits he has no way to disaggregate

the damages he allegedly suffered from the challenged statements. (Apr. 30 Blankenship Dep.

85:1-7 ("No. I think it would be impossible to argue that that one single statement is responsible

for the defamation. . . .").)

Blankenship's claims cannot survive summary judgment because he fails to "present some

evidence of some causative connection" to the statements made by NBC and CNBC. *Faltas v.*

*State Newspaper*, 928 F.Supp. 637, 651 (D.S.C. 1996), *aff'd*, 155 F.3d 557 (4th Cir. 1998). Absent

Defendants' statements, Blankenship would be claiming the exact same damages from any of the

other 100 media entities that uttered the word "felon." (Apr. 30 Blankenship Dep. 85:1-7.) But the

law holds that a defamation defendant can only be liable for damages caused by its own statements.

Syl., *Barger v. Hood*, 104 S.E. 280 (W. Va. 1920) ("A suit for libel cannot be maintained against

two or more defendants, unless it appears from the declaration that the publication of the libel was

the common joint action of all of them"). The undisputed facts establish that he cannot explain

how NBC or CNBC contributed, added to, or caused those losses because in his own words, that

would be "impossible." (Apr. 30 Blankenship Dep. 85:1-7; *see also* **Exs. 7 and 8**, Plaintiff's Am.

Resp. to NBC and CNBC Interrog., at pp. 4-5, No. 9 (admitting that "Plaintiff has no information"

---

[6]       Among the media outlets targeted by Blankenship are: the National Journal, Watauga Watch, Down with
Tyranny, the Washington Times, Mediaite, National Public Radio, Roll Call, The Guardian, News and Guts, the Los
Angeles Times, Market Watch, Splinter, The New York Daily News, The National, the Daily Beast, The Weekly
Standard, Esquire, Hayride, NowThisPolitics, the New Hampshire Union Leader, the Hill, Wonkette, the Daily Mail,
Vice, the 74, Breakfast Media, the Sacramento Bee, the Observer, Breitbart News, the Associated Press, the York
Daily Record, the Charleston Gazette, Townhall, the Huffington Post, and the Frontrunner. (*See id.* at ECF No. 14, ¶¶
152-251.)

regarding any people, entities, or recruiters from whom he has sought employment or assistance with finding employment).) With no evidence of causation, Blankenship's claims against Defendants should be dismissed.[7]

### 3.       Blankenship Cannot Rely Upon Presumed Damages.

With no evidence of actual harm caused by Defendants' statements, Blankenship seems to rely entirely upon the concept of "presumed damages." But as a public figure, presumed damages are not available to Blankenship in this defamation case, even if he were able to prove actual malice (which he cannot). Although the Supreme Court has stated that States *may* allow defamation Plaintiffs to be awarded presumed damages where there is a showing of actual malice, it has never found that States are required to do so. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349 (1974). Rather, *Gertz* disapproved of the "the doctrine of presumed damages" as inviting "juries to punish unpopular opinion rather than to compensate individuals for injury sustained by the publication of a false fact." *Id.*

In keeping with *Gertz*, the weight of authority limits presumed damages to private figure cases, even in cases where the plaintiff—unlike Blankenship—is able to prove actual malice. *See MacDonald v. Riggs*, 166 P.3d 12, 18 n.20 (Alaska 2007) (collecting cases and noting that "[t]he majority of states" allow presumed damages only in cases of defamation per se that "are not about matters of public concern."); *Cobb v. Time Inc.*, No. 3:94–0836 1999 WL 1027044, *1 (M.D. Tenn. Feb. 17, 1999) (holding that the law does "not permit presumed damages in [public figure] defamation cases and that Plaintiff must prove actual damages."). The rule of presumed damages

---

[7]      Blankenship appears to continue to try to link NBC's statement to his 2018 primary election loss (*see* **Ex. 7 and 8**, Plaintiff's Am. Resp. to NBC and CNBC Interrog., at p. 2 and 5, Nos. 6 and 11), but that would be impossible: both the May 17 Article and June 25 Article were published *after* the election on May 8, 2018 and so could not have influenced its outcome. Blankenship at least appropriately admits that he cannot identify any voters whom the articles affected. (*Id.*; Apr. 30 Blankenship Dep. 163:11-22.)

"is a procedural device" reserved for private-figure defamation cases that allows them "to go to the jury in the absence of proof of actual damages." *Nuwave Inv. Corp. v. Hyman Beck & Co., Inc.*, 114 A.3d 738, 740 (N.J. 2015). In defamation cases involving "an issue of public controversy or concern," most states have determined that the "common law presumptions" of malice or that "the plaintiff suffered general damages do not apply. . . ." *Erickson v. Jones St. Publishers, LLC*, 629 S.E.2d 653, 665 (S.C. 2006).

Finally, even in private-figure cases—which this case is not—West Virginia law provides that damages may only be presumed if they are related to "the natural and probable consequence of the words so spoken or written." *Richard H. v. Rachel B.*, No. 18-1004, 2019 WL 6998331, *3 (W. Va. Dec. 20, 2019) (internal quotation, citation, and alteration omitted). So, even if Blankenship were a private figure entitled to presumed damages, he still would have to prove causation, which he cannot do—as demonstrated *supra*, pp. 19-21.

As a public figure, Blankenship cannot blindly rely on presumed damages to survive summary judgment, and he has no evidence of actual damages caused by CNBC or NBC. For this additional reason, all of his claims against NBC and CNBC should be dismissed as a matter of law.

## IV.    CONCLUSION

For all these reasons, the Court should grant summary judgment in favor of NBC and CNBC on all of Plaintiff's claims.


Respectfully submitted,

24

 /s/ Kevin T. Shook                         /s/ Jared M. Tully

Kevin T. Shook (OH #0073718)    Jared M. Tully (WV Bar No. 9444)
(*pro hac vice*)    Alex J. Zurbuch (WV Bar No. 12838)
Frost Brown Todd LLC    Frost Brown Todd LLC
10 West Broad Street, Suite 2300    500 Virginia Street East, Suite 1100
Columbus, OH 43215    Charleston, WV 25301
kshook@fbtlaw.com    azurbuch@fbtlaw.com
(614) 464-1211 Phone    jtully@fbtlaw.com
(614) 464-1737 Fax    (304) 345-0111 Phone
    (304) 345-0115 Fax


Ryan W. Goellner (OH #0093631)
(*pro hac vice*)
Frost Brown Todd LLC
3300 Great American Tower
301 E. Fourth Street
Cincinnati, OH 45202
(513) 651-6800 Phone
(513) 651-6981 Fax
rgoellner@fbtlaw.com

*Attorneys for CNBC, LLC and NBCUniversal, LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON**

DON BLANKENSHIP,                              :
                                             :
            Plaintiff,                        :        Civil Action No. 2:20-cv-000278
                                             :
      v.                                      :        Judge John T. Copenhaver, Jr.
                                             :
NBCUNIVERSAL, LLC, *et al.*                    :
                                             :
            Defendants.                       :

## CERTIFICATE OF SERVICE

I, Jared M. Tully, do hereby certify that I have served the *Defendants NBCUniversal, LLC and CNBC, LLC's Memorandum in Support of Motion for Summary Judgment* upon counsel for each party by electronic mail, this 24th day of May, 2021.


                                        */s/ Jared M. Tully*
                                        Jared M. Tully (WV Bar No. 9444)


0141761.0736657  4846-8228-8611v8

26